**David M. Pyke**
**Texas Bar No.16419700**
E-mail: *dpyke@dallastrial.com*
**Wendy D. Dawer**
**Texas Bar No. 24036451**
E-mail: *wdawer@dallastrial.com*
**PYKE & ASSOCIATES, P.C.**
12655 N. Central Expressway
North Central Plaza I, Suite 700
Dallas, Texas 75243
214.866.0133 Telephone
214.866.0433 Facsimile

ATTORNEYS FOR DEFENDANT
JAMES H. MOORE, III, JHM PROPERTIES,
AND ELIZABETH MOORE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JAMES H. MOORE, III, | § | CASE NO. 06-31859 |
| | § | (CHAPTER 7) |
| Debtor. | § | |

### RESPONSE BY JAMES H. MOORE, III, ELIZABETH MOORE and JHM PROPERTIES, INC. TO OBJECTION OF THE CADLE COMPANY TO TRUSTEE'S MOTION TO APPROVE SETTLEMENT

James H. Moore, III, debtor, and Elizabeth Moore and JHM Properties, Inc. (the "Moore Parties") file this response to the "Objection of the Cadle Company to Trustee's Motion for Order Approving Settlement Agreements Pursuant to Bankruptcy Rule of Procedure 9019."

#### SUMMARY OF POSITION

The Cadle Company's "objection" to the Trustee's settlement position does not state an

objection cognizable under the Bankruptcy Code or Rules. Cadle neither argues that the Trustee negotiated poorly, that the Moore Parties have other assets available for collection, that the claims against the Moore Parties are stronger than the settlement reflects, nor any other position indicating that the Trustee did not fairly and reasonably negotiate an end to disputed litigation. Cadle merely would like to pay the Trustee not to settle the claim. Cadle's desire is to perpetuate litigation against the Moore Parties, prevent settlement of disputes, and hinder the role of the Trustee. There is no legal authority available to the Court to void an agreement made by the Trustee based on Cadle's argument.

## FACTUAL SUMMARY

The Court is well familiar with this case. In sum, the Trustee has alleged that JHM Properties is the alter ego of the debtor. The Moore Parties deny this allegation but have contended that the only valuable asset of JHM Properties is its interest in Brunswick Homes and Brunswick Properties. Brunswick Homes and Brunswick Properties adamantly argue that JHM's interest in those entities is worthless.[1] The Trustee negotiated exhaustively with the Moore Parties and reached an agreement with them to accept $35,000 in settlement of the Trustee's claims. This amount would be funded largely by Moore surrendering his exempt IRA assets as identified in his bankruptcy schedules.

Cadle is the largest creditor of Moore, and has pursued him relentlessly. Cadle's attorneys have represented the Trustee in this adversary, but Cadle would not fund the expenses of this proceeding. Seemingly, Cadle did not believe the claim so valuable as to fund it for all creditors,

---

[1] Although allegations were made that Elizabeth Moore received fraudulent transfers from the debtor, no specific transfer was ever identified, and at a docket call months ago, in open court and on the record, the Trustee's counsel announced its intent to unilaterally dismiss these claims.

nor did Cadle make an offer to the Trustee, as set forth in the objection, until *after* the Trustee had negotiated *and agreed* to settle the claims with the Moore Parties. Effectively, Cadle permission for the Trustee, represented by Cadle's long-standing law firm, to breach its signed settlement agreement. There is no authority for such an action.

### COURT'S ROLE IN APPROVING SETTLEMENTS

A United States Bankruptcy Court may approve or disapprove settlements, if requested by a Trustee. 11 U.S.C. §50. Rule 9019(a) states:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.

The Court should approve the settlement to insure that it is "fair and equitable." *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980). The Court should "compare the 'terms of the compromise with the likely rewards of litigation'." *Id.* quoting *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968). Factors to evaluate include the probability of success in the litigation, the complexity, likely duration, and expense of the litigation, and all other factors bearing on the wisdom of the compromise. *Id.* The Court's determination will be judged on an abuse of discretion standard and addressed to the "sound discretion" of the Court. *Id* at 603. The Court's review should be limited "to simply whether [the] Trustee had complied with his fiduciary obligations to the estate in reaching the settlement that he did." *In re Dalen,* 259 B.R. 586, 591 (Bkrtcy.Ct. W.D. Mich. 2001).

The role of the Court should not be to "second guess competent, disinterested trustees . . ." *Id.* at 610. Therefore, the Court should determine whether the trustee acted competently, impartially, and legally; not whether a better deal could be obtained elsewhere. *See Id.* at 614. The Court is being asked to *approve* a settlement made, not to make a new one.

In *Dalen*, the Court approved a settlement with a judgment creditor that the Court knew returned less to the estate than was possible if the settlement were not approved. At dispute was whether the debtor's agreement with the creditor, prior to bankruptcy, was executory so that the Trustee could timely reaffirm the contract. *Id*. at 591. Before the court ruled on this issue, the Trustee and creditor reached a settlement more beneficial to the creditor than the allegedly executory contract. The court knew, but had not announced, that it would rule that the debtor's contract was executory and could be accepted by the Trustee.

In this instance, the *Dalen* Court questioned whether it should approve a settlement more detrimental to the estate than the ruling the Court was prepared to make. This difficult issue launched the court into extensive research which the Judge described as "wander[ing] about in the case law much as Odysseus and Aeneas wandered about the Mediterranean after the Trojan war. It was lessons learned from this excursion which has led the court to conclude that it should have approved the settlement . . ." *Id.* at 594. The Court's analysis was broad and deep as to the proper role of the Court in approving settlements. In short, the Court concluded that it is not the Bankruptcy Court's place to maximize return to the estate but instead to determine if the Trustee entered the settlement without collusion, illegality, or violating the public interest. *Id*. at 605. In the instance at bar in *Dalen*, the Court knew more than the Trustee – i.e. it would be better to await the Court's decision than to settle. In this case, Cadle says that it knew something the Trustee did not – i.e. that Cadle would pay more for the claim than the Trustee had agreed to receive. In both cases, the Trustee's decisions was rationale, fair, and based on the facts at hand; therefore, the Court should, in both cases, support the Trustee's decision. Indeed, to do otherwise would permit the Trustee to breach an agreement already made and undermine the authority and integrity of its position.

## ANALYSIS OF THE OBJECTION

Cadle asks the Court to withhold approval of an agreement already executed solely because now – after the settlement is publicly announced – Cadle wants to purchase the litigation. Cadle does not attempt to establish that the Trustee acted unwisely or unfairly in negotiating a resolution to disputed litigation. Instead, Cadle asks permission to purchase the claims but shows no authority that the Court can order the Trustee to sell his claims.

Cadle is manipulating the process. Last year, Cadle refused to fund this lawsuit for the benefit of all creditors. Now Cadle does not disclose that there are assets, evidence, or reasons unknown to the Trustee that would have led to an enhanced settlement. Indeed, if Cadle has such information, it should be shared so that all creditors benefit. Instead Cadle, for reasons unknown, seeks merely to block a settlement. Cadle does not propose an alternative settlement; it proposes to continue litigation for which the goals are not set forth. Effectively, Cadle proposes to pay the Trustee and the Estate funds so that litigation is *not* resolved. In another context, this would be tortious interference with contract. *See, e.g., Texaco v. Pennzoil Co.*, 729 S.W.2d 768 (Tex.App. – Houston [1st Dist.] 1987, writ ref'd).

Cadle argues that its offer is better than the settlement. However, Cadle only made its offer after the Trustee had entered an agreement with the Moore Parties. The Trustee did not reject an offer from Cadle to accept something less from the Moore Parties. Instead, Cadle waited until the Moore Parties reached an agreement and then seeks to outbid them. Cadle's approach should be rejected for multiple reasons.

First, Cadle, if interested in purchasing the claims, should have made an offer long ago before the Trustee invested its time and effort to bring the claims to the brink of trial.

Second, Cadle's offer is an unfair negotiating tactic. It did not bid against the Moore Parties. Instead, it waited for a deal to be negotiated, and then seeks to re-negotiate from that point. That negotiating tactic is fundamentally unfair to anyone dealing with a trustee by forcing them to reveal their settlement hand first and fully. Since Trustees normally seek court approval of their settlements, the party negotiating with the Trustee in good faith is automatically prejudiced by disclosing its bargaining position while other parties can hide their intentions.

Third, the Trustee has sought approval of a settlement actually made, and Cadle cites no authority that would permit the Court to void a settlement freely, fairly, and equitably entered because Cadle now, belatedly, offers a competing offer. There is no allegation that the Trustee acted improperly; therefore, its settlement should be approved.

Fourth, if Cadle's action have any rationale basis, it must be based on information unique to them concerning the value of the claims. Cadle should be required to disclose this information before the Court approves a transaction for the benefit of Cadle.

Fifth, and most fundamentally, Cadle presents in its objection no authority permitting the Court to order an auction of the Trustee's claims. A trustee in bankruptcy has some extraordinary powers, and the Code does not grant the authority to sell the trustee's powers to the highest bidder. Cadle's settlement seems to be for the purpose of withdrawing the claims and the litigation from the Court's purview and returning it to state court. Therefore, Cadle seeks to take the Trustee's powers to a different venue, where it could seek more discovery, attempt to expand the claims, and prevent a timely resolution of the claims unquestionably owned by the Trustee. This is fundamentally unfair to the Moore Parties, especially at this late stage of the proceedings.

There is but one agreement before the Court which the Trustee has requested to be approved.

There is no legal or factual authority presented to deny its approval. The agreement presented is fair, reasonable, and equitable. It should be approved and Cadle's objection overruled.

                                              Respectfully submitted,

                                              Pyke & Associates, P.C.

                                              /s/ David M. Pyke
                                              **David M. Pyke**
                                              **State Bar No. 16419700**
                                              **Wendy D. Dawer**
                                              **State Bar No. 24036451**
                                              12655 North Central Expressway
                                              North Central Plaza I, Suite 700
                                              Dallas, Texas 75243
                                              Main Ph: 214.866.0133
                                              Fax: 214.866.0433

                                              **ATTORNEYS FOR DEFENDANTS JAMES H. MOORE, III**

## CERTIFICATE OF SERVICE

      This is to certify that a true and correct copy of the foregoing was served via e-mail on all interested parties on March 6, 2008:

                                                /s/ David M. Pyke
                                                David M. Pyke